IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| KROY IP HOLDINGS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 2:13-cv-888-WCB |
| | § | |
| AUTOZONE, INC., ET AL., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are two motions to supplement invalidity contentions in this case. The first was filed by defendants AutoZone, Inc.; Panera Bread Company; Men's Wearhouse, Inc.; and Starbucks Corporation (collectively, the "AutoZone defendants").[1] Dkt. No. 104. The second was filed by defendant Hallmark Marketing Company, LLC. Dkt No. 118. Plaintiff Kroy IP Holdings, LLC, opposes both motions. Having considered the parties' written submissions, the Court GRANTS both motions.

Under Local Patent Rule 3-6(b), supplementation of invalidity contentions "may be made only by order of the Court, which shall be entered only upon a showing of good cause." P.R. 3-6(b). The "good cause" standard requires the party seeking relief to show that despite its diligence, the deadlines cannot reasonably be met. S&W Enters., L.L.C. v. SouthTrust Bank of

---

[1] Defendants BJ's Restaurants, Inc.; Genghis Grill Franchise Concepts, LP; and Mrs. Fields Famous Brands, LLC, were originally parties to the AutoZone defendants' motion. See Dkt. No. 104. All three defendants have since been dismissed from the case. See Dkt. Nos. 125, 126, 130.

Ala., NA, 315 F.3d 533, 535 (5th Cir. 2003). In determining whether a party has demonstrated good cause, the Court considers (1) the explanation for the party's failure to meet the deadlines; (2) the importance of the amendment; (3) potential prejudice from allowing the amendment; and (4) the availability of a continuance to cure such prejudice. Innovative Display Techs. LLC v. Acer Inc., 2014 WL 2796555, at *1 (E.D. Tex. June 19, 2014) (citing S&W Enters, 315 F.3d at 536). After weighing the relevant factors regarding the requests of both the AutoZone defendants and Hallmark, the Court concludes that good cause has been shown in each case.

## I. The AutoZone Defendants' Motion

The AutoZone defendants seek to supplement their invalidity contentions, originally filed on June 2, 2014, with additional references relating to a European prior art system known as the Tesco Clubcard program. Those references include (1) several publications describing the operation of the Tesco Clubcard program ("the Tesco references"), and (2) a marketing study regarding the Tesco Clubcard program and other similar marketing initiatives that were prepared for the Coca-Cola Retailing Research Group, Europe ("the Coca-Cola reference").

The deadline for submitting invalidity contentions was June 2, 2014. See Docket Control Order, Dkt. No. 43. After submitting their original contentions and during their continued investigation of the asserted patents, the AutoZone defendants learned of the Tesco Clubcard system for the first time in September 2014. Between September 16, 2014, and October 14, 2014, the AutoZone defendants produced to Kroy all the additional references they now seek to include in their invalidity contentions. On October 10, 2014, counsel for Kroy and AutoZone met and conferred regarding plaintiff's infringement allegations asserted against AutoZone. Five days after the meeting, the AutoZone defendants served their proposed supplemental invalidity

contentions on Kroy's counsel. The Court conducted the claim construction hearing in this case the following month, on November 19, 2014.

It is undisputed that the discovery of the Tesco prior art was untimely. The AutoZone defendants first learned of the Tesco system more than three months after the due date for filing invalidity contentions. The defendants' explanation for their belated discovery is that the Tesco system was a 20-year-old loyalty program offered only to Tesco's customers in Europe. While the age and difficulty in unearthing prior art is a factor to be considered in determining whether good cause has been shown to supplement invalidity contentions, the Court is not persuaded that it should automatically exempt old, foreign art from the due date requirement. "That it took Defendants more time beyond the original deadline to find new arts, in and of itself, is no excuse for a late supplementation. To hold otherwise would render 'the explanation for the party's failure to meet the deadline a non-factor." Innovative Display, 2014 WL 2796555, at *1 (E.D. Tex. June 19, 2014).

The AutoZone defendants nevertheless argue that the supplementation should be permitted because their diligence in searching for and analyzing the prior art should be viewed in light of Kroy's new infringement theory allegedly disclosed for the first time during the parties' October 10, 2014, meeting. According to the defendants, Kroy originally accused AutoZone of infringing the asserted claims of the patent in suit, U.S. Patent. No. 7,054,830 ("the '830 patent"), by providing offers to customers that "are tailored to the customer's personal demographic and psychographic information," such as name, address, phone number, purchase history, purchase location, etc. After learning that AutoZone's reward program provides the same award to each member regardless of their identity or preferences, Kroy changed course,

according to the defendants, alleging for the first time during the parties' October 10, 2014, meeting that AutoZone's periodic email communication of "exclusive members-only deals" to AutoZone Rewards members, and not the standard AutoZone rewards themselves, infringe. The defendants contend that this new infringement theory brought to light the significance of the Tesco program, which also discloses members-only communications. Five days after the October 10, 2014, meeting, the defendants served the proposed supplemental invalidity contentions on Kroy, seeking to include the Tesco program in the prior art.

Kroy does not deny that it now bases its infringement contentions against AutoZone, in whole or in part, on AutoZone's "exclusive members-only deals" emails. It insists, however, insists that this infringement theory is not new. Kroy asserts that its infringement contentions made clear that it accused all the defendants' systems and methods that provide "personalized offers," which should have given AutoZone sufficient notice that its "members-only deals" emails were within the scope of the contentions. Thus, Kroy contends that the parties' interchanges at the October 10, 2014, meeting lend no support to AutoZone's belated request to supplement its invalidity contentions.

The Court disagrees that Kroy's infringement contentions gave AutoZone clear notice that its "members-only deals" emails were being accused. The infringement contentions accused AutoZone of providing reward offers to customers that were tailored to the customer's personal information. See Preliminary Infringement Contentions: AutoZone, Inc., Dkt. No. 104-6, Appx. A, at 3. AutoZone's "members-only deals" emails, on the other hand, are not sent to selective customers according to their personal preferences; the emails are sent to some customers but not others based solely on one criterion—whether a customer is an AutoZone member. The Court

does not now decide the merits of Kroy's argument that such a reward system satisfies the claim requirement of tailoring a specific award to the "demographic and psychographic preferences" of a customer. It suffices to say that Kroy's infringement contentions, which focused on tailoring an award unit to a customer's personal information, failed to put the defendants clearly on notice that AutoZone's "members-only deals" emails were part of the accused system.

At the October 10, 2014, meeting, the defendants were clearly informed of the possibility that Kroy would proceed with its "members-only deals" theory of infringement. The Court concludes that under these circumstances the defendants are entitled to make a showing that similar members-only communications were found in the prior art, such as in the Tesco program. Thus, while the defendants' alleged difficulty in finding the Tesco reference would not by itself justify extending the deadline to supplement their invalidity contentions, good cause is shown by Kroy's clarification in the October 10, 2014, meeting that its infringement theory encompasses AutoZone's "members-only" offers.[2]

In its opposition to the AutoZone defendants' motion, Kroy contends that (1) the Tesco references do not anticipate the asserted claims; (2) the Coca-Cola reference is not a printed publication under 35 U.S.C. § 102; and (3) the additional references do not qualify as enabling printed publications. Regarding the first of those arguments, the Court notes that a prior art

---

[2] Kroy argues that the events at the October 10, 2014, meeting are irrelevant to the good cause determination because the defendants admit that they did not discover the prior art at issue until well after the June 2, 2014, deadline for filing invalidity contentions. The Court disagrees. If in its infringement contentions Kroy had clarified its theory that the '830 patent reads on "members-only deals" incentive programs, that clarification would have given the defendants a reason to search for and focus on prior art that would address that theory. The defendants assert as much in their motion, where they claim that "[b]ecause [Kroy's "members-only deals" theory] was not disclosed in Plaintiff's Infringement Contentions, Defendants did not focus on this interpretation of the claim language when originally identifying prior art references." Dkt. No. 104, at 2.

reference need not anticipate the claims in suit in order to qualify as invalidating prior art. It may serve, for example, as one of multiple prior art references that support an obviousness argument. The remaining two arguments relate to the merits of the invalidity issue and are not proper subjects to be resolved on this motion.

The Court finds that the AutoZone defendants have shown good cause for supplementing their invalidity contentions with the Tesco references and the related Coca-Cola reference. The Court therefore GRANTS the AutoZone defendants' motion for leave to supplement their invalidity contentions. The Court, however, is mindful of the potential prejudice to Kroy caused by the belated supplementation. In particular, under the Court's original docket control order, granting leave to supplement the defendants' invalidity contentions might have left Kroy insufficient time to conduct discovery and prepare its expert reports in light of the new prior art. While the pretrial schedule under the Court's original docket control order would have made prejudice to Kroy a more compelling consideration in balancing the factors that bear on the "good cause" determination, the Court on December 29, 2014, amended the docket control order in a way that will give Kroy substantial additional time for any discovery that it needs to conduct relating to the defendants' new invalidity contentions. The amended docket control order will also extend the deadlines for filing expert reports.[3]

## II. Defendant Hallmark's Motion

Defendant Hallmark seeks to supplement its invalidity contentions with two videos and other related materials from 1994 that allegedly describe how an earlier version of Hallmark's

---

[3] The amendment to the docket control order will also serve to avoid any possible prejudice to the defendants stemming from Kroy's belated disclosure of its "members-only deals" infringement theory at the October 10, 2014, meeting of counsel.

accused infringing system operated at that time. Under Vanmoor v. Walmart Stores, 201 F.3d 1363, 1366 (Fed. Cir. 2000), and Evans Cooling Systems, Inc. v. General Motors Corp., 125 F.3d 1448, 1451 (Fed. Cir. 1997), an accused infringer may satisfy its burden to prove anticipation of the asserted claims by showing that the accused infringing product or system were on sale or in public use before the earliest possible critical date of the patents. Hallmark contends that the new references constitute clear and convincing evidence that Hallmark's accused Crown Rewards Program was launched in 1994, well before the earliest possible critical date of Kroy's asserted patent.

The deadline for filing invalidity contentions was June 2, 2014. Hallmark represents that its in-house legal staff first located the two 1994 videos (in VHS videotape format) on or about August 12, 2014, and that Hallmark's in-house staff provided those videos to outside counsel on August 28, 2014. Copies of the two videos were turned over to Kroy's counsel on August 29, 2014. Hallmark located other relevant documents in the ensuing weeks, and it produced those documents to Kroy on September 9 and September 30. On October 16, 2014, Hallmark provided Kroy with a detailed invalidity chart based on the newly discovered prior art. The parties participated in the Court's claim construction hearing on November 19, 2014.

The prior art references Hallmark now seeks to include in its invalidity contentions are potentially important to the issue of anticipation. Kroy does not dispute that under Vanmoor, Hallmark could prove anticipation by showing that its accused rewards program was in public use before the critical date of the asserted patent. Kroy contends, however, that Hallmark has provided no evidence to show that the 1994 version of the Crown Rewards Program is the same as the program that is accused in this case. While Hallmark bears the burden of proof on that

issue in attempting to show that the earlier Crown Rewards Program anticipates Kroy's patent, Hallmark need not adduce conclusive evidence in its invalidity contentions. Invalidity contentions are procedural tools for providing notice of a party's specific theories of invalidity, and Hallmark's proposed supplemental invalidity contentions clearly assert that the 1994 Crown Rewards Program constitutes anticipating prior art that was in public use before the critical date. Hallmark has also provided a detailed, feature-by-feature comparison of the 1994 rewards program and the accused program in this case. See Dkt. No. 118, at 4-6. Those disclosures give sufficient notice to Kroy regarding Hallmark's invalidity theory. Hallmark was not required to offer conclusive evidence as to the similarity between the two versions of Hallmark's rewards program in order to present its new theory of invalidity through its invalidity contentions.

Kroy argues that Hallmark's proposed amendment is not important, because Hallmark itself has contended that at least three claim elements are missing from the accused rewards program, and for that reason the 1994 version of the program cannot invalidate the asserted patent. The Court disagrees. Rule 8(d) of the Federal Rules of Civil Procedure allows a party to plead alternative, and even inconsistent positions. Fed. R. Civ. P. 8(d). Under Rule 8(d), Hallmark is entitled to assert that the accused rewards program does not infringe, while at the same time asserting in the alternative that if the program is found to infringe, an earlier version of the program would anticipate Kroy's patent. The defendants in Vanmoor took the same position as Hallmark, denying that the accused product infringed, while claiming that the same product constituted anticipating prior art. See Vanmoor, 201 F.3d at 1366. The Federal Circuit found that because the defendants conceded infringement for purposes of the summary judgment motion of invalidity, their on-sale defense based on the accused product had been "properly pled

in the alternative." Id.; see also Teva Pharm. Indus. Ltd. v. Astrazeneca Pharms. LP, 661 F.3d 1378, 1382 (Fed. Cir. 2011); Evans Cooling, 125 F.3d at 1451; Google Inc. v. Beneficial Innovations, Inc., 2014 WL 4215402, at *4 (E.D. Tex. Aug. 22, 2014). In this case, to prevail on its public use defense based on the 1994 Crown Rewards Program, Hallmark may likewise need to concede infringement at a later, substantive stage of the proceedings. However, Hallmark is not barred from setting forth its theory of invalidity in its invalidity contentions, even though that theory may be inconsistent with Hallmark's non-infringement position.

Accordingly, the Court finds that Hallmark's supplemental invalidity contentions are important to Hallmark's invalidity defense of prior public use. That being said, the Court is troubled by the timing of Hallmark's request for supplementation. Hallmark alleges that it did not locate the two 1994 videos and related documents until more than two months after the deadline for filing invalidity contentions because the two videos had been in a closed litigation file from an unrelated Hallmark case. On the other hand, Hallmark asserts that its motion to transfer venue, which was filed on April 5, 2014, placed Kroy on notice that the Crown Rewards Program, originally known as the Hallmark Gold Crown Card Program, was introduced in 1994 and has been in existence ever since. See Dkt. No. 148, at 2; case no. 2:13-cv-933, Dkt. No. 19-1, at 2. The problem is that the April 5, 2014, motion that Hallmark cites as proof of its early notice to Kroy of the 1994 Gold Crown Card Program demonstrates that Hallmark was aware of the significance of that program as potentially anticipating prior art. Even assuming that it took Hallmark more than four months after April 2014 to locate all the relevant evidence supporting its invalidity theory, Hallmark has not provided an adequate explanation for its failure to even allude to that theory in its original invalidity contentions, filed on June 2, 2014. Hallmark did

not inform Kroy of its intention to use the original Gold Crown Card Program as anticipating prior art until more than two months after the June 2 deadline. In light of the docket control order then in effect, Hallmark's action could have adversely affected Kroy's ability to prepare a full and timely response to this additional ground of invalidity.

In assessing Hallmark's motion to supplement its invalidity contentions, the Court is faced with competing considerations. Based on Hallmark's representations as to the nature of the prior art Gold Crown Card Program, there is little doubt as to the potential importance of Hallmark's proposed amendment. In addition, given that Hallmark is a large company and that the materials from 1994 were not maintained in electronic or other readily searchable form, the Court accepts Hallmark's representation that it did not discover the critical materials relating to that program until well after the June 2, 2014, deadline for filing invalidity contentions and that its failure to discover those materials was excusable. However, Hallmark should have informed Kroy at an earlier time of its intention to raise an on-sale bar defense based on the original Crown Rewards Program, and Hallmark should have moved to supplement its invalidity contentions promptly after discovering the 1994 materials.

On balance, because the proposed amendment relates to an important piece of evidence bearing directly on the merits of the case and because Hallmark has made a plausible showing of justification for not discovering the critical materials until after June 2, 2014, the Court concludes that it would be improper to bar Hallmark from raising that invalidity claim in this case. While potential prejudice to Kroy would have been a more compelling consideration under the Court's original docket control order, the Court's amended docket control order will give Kroy substantial additional time for any discovery that it may need to conduct relating to

Hallmark's new invalidity contention, thereby minimizing any prejudice to Kroy, and it will give the parties additional time for filing expert reports. Any possible prejudice to Kroy is therefore substantially mitigated by the change in the pretrial schedule. The Court therefore Court GRANTS Hallmark's motion for leave to supplement its invalidity contentions.

It is so ORDERED.

SIGNED this 30th day of December, 2014.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE