# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| KROY IP HOLDINGS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 2:13-cv-888-WCB |
| | § | |
| AUTOZONE, INC., ET AL., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion for Reconsideration of Claim Construction Memorandum Opinion and Order. Dkt. No. 172. The motion is DENIED.

**1. The Court's Claim Construction Order**

The Court issued a claim construction order on December 23, 2014. One of the claim limitations for which the parties sought a claim construction was the limitation "in communication with an inventory management system." That limitation appeared in claim 1 and, in slightly different form, in claim 19.

The defendants initially proposed that the phrase "in communication with an inventory management system" should be construed to mean "which electronically connects an awards database to a system that provides a listing of items (i.e., products or services) or types of items (i.e., categories of products or services) currently available for redemption in a retailer's inventory." They proposed a slightly different (but substantively identical) construction for the corresponding limitation in claim 19.

Shortly before the claim construction hearing, the defendants modified their proposed construction of the "in communication with an inventory management system" limitation. In their modified proposal, they requested that the court construe that limitation in claim 1 to mean the following: "which electronically connects an awards database to a system that provides a quantity of items (i.e., products or services) or types of items (i.e., categories of products or services) currently available for redemption in a retailer's inventory." They proposed a similar modified construction for the corresponding limitation in claim 19, except that, in addition to changing the word "listing" to "quantity," they modified the phrase "electronically connecting an awards database to a system" to read "an electronic connection between an awards database and a system." Dkt. No. 113. The only difference of substance in the proposed claim constructions was the substitution of the word "quantity" for the word "listing" in both proposed constructions.

In the pleading in which they filed their modified claim construction, the defendants stated that they were relying on the Patent Trial and Appeal Board's September 11, 2014, Decision Denying Institution of <u>Inter Partes</u> Review in IPR2014-00685, Dkt. No. 113-1, and the October 29, 2014, Decision Denying Petitioner's Request for Rehearing in connection with that request for <u>inter partes</u> review, Dkt. No. 113-2. Apart from citing those decisions of the PTAB, the defendants did not provide any briefing in support of their modified claim construction.

At the claim construction hearing, the Court invited the parties to submit supplemental briefs directed to the construction of the "in communication with an inventory management system" limitation. Following the hearing, both parties submitted supplemental briefs. In one section of their brief, the defendants argued that the term "inventory" should be construed to mean "quantity."

In the claim construction order, Dkt. No. 162, the Court stated the following with regard to the meaning of the term "inventory":

> While the term "quantity" is generally consistent with the concept of an inventory, an inventory is not limited to a measure of quantities of items, which might be suggested by defining inventory in terms of quantity. Moreover, the Court is not persuaded that the term "quantity" adds clarity to the unelaborated term "inventory" in the definition of "inventory management system." The Court will therefore not adopt the proposed definition of the limitation "in communication with an inventory management system."

Dkt. No. 162, at 12.

In the claim construction order, the Court also made the following comment with regard to the defendants' modified proposed claim construction: "The defendants have provided no briefing in support of that claim construction." That statement by the Court was incorrect. While it is true that the brief in which the defendants set forth their modified proposed claim construction contained no briefing in support of the revised claim construction, but only a citation to the two PTAB opinions, the defendants submitted argument in support of their revised claim construction in part III of the supplemental brief that the defendants submitted, at the court's invitation, after the hearing.

Based on the Court's erroneous statement about the absence of briefing on that issue, the defendants have sought reconsideration of the Court's claim construction of the "in communication with an inventory management system" limitation, and in particular of the term "inventory."

When the Court entered its December 23, 2014, claim construction order, the Court was aware of the two PTAB opinions and the supplemental brief filed in response to the Court's invitation. What the Court had intended to point out in the sentence focused on by the

3

defendants was that the defendants' modification of the proposed claim construction of the "in communication with" limitation was not accompanied by any briefing. Indeed, the absence of briefing on that issue was one of the reasons the Court sought supplemental briefing with respect to that limitation. However, the Court's statement, as written in the order, was not specifically limited to the pleading in which the modified proposal was submitted. As written, the statement was broad enough to cover the supplemental brief, and it was therefore mistaken.

**2. The Legal Standard Applicable to the Motion for Reconsideration**

At the outset, the Court will address the first argument made by Kroy—that a motion for reconsideration should not be entertained unless it either contains manifest error of law or fact, or points to newly discovered evidence that justifies reconsideration. Dkt. No. 175, at 2-3. Normally, that principle is correct. As applied to claim construction, however, it is not. A claim construction order is not a final ruling as to the court's construction of the patent claims before it. Rather, claim construction can be, and often is, an ongoing process that leads to refinements in the court's claim construction in the course of the case as the court gains a better understanding of the claims.

The Federal Circuit has made clear that a district court may adopt an "evolving" or "rolling" claim construction, in which the court's construction of claims evolves as the court better understands the technology and the patents at issue. See Pressure Prods. Med. Supplies, Inc. v. Greatbatch Ltd., 599 F.3d 1308, 1316 (Fed. Cir. 2010) (quoting Pfizer, Inc. v. Teva Pharms., USA, Inc., 429 F.3d 1364, 1377 (Fed. Cir. 2005)) ("[D]istrict courts may engage in a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves."); Conoco, Inc. v. Energy & Envtl. Int'l,

Inc., 460 F.3d 1349, 1359 (Fed. Cir. 2006 (same); Utah Med. Prods., Inc. v. Graphic Controls Corp., 350 F.3d 1376, 1381-82 (Fed. Cir. 2003) (same); Jack Guttman, Inc. v. Kopykake Enters., Inc., 302 F.3d 1352, 1361 (Fed. Cir. 2002) (same); ION, Inc. v. Sercel Inc., 2010 WL 3913225, at *6 (E.D. Tex. Sept. 16, 2010); see also In re Acacia Media Techs. Corp., 2010 WL 2179875, at *4 (N.D. Cal. May 25, 2010) ("The Court finds that it would hinder litigation and the claim construction process to find a change in claim construction position to be vexatious or improper, since the Court's role is to determine the proper construction, which may entail an evolving understanding of the claim terms.").

Beyond that, this is not a typical motion for reconsideration. The defendants are not simply requesting that the Court revisit a matter that the Court has already resolved after a full presentation by the parties. Their point is that if the Court was unaware of their earlier briefing, the Court's December 23, 2014, claim construction order would not have actually addressed all of their arguments, even for the first time. In effect, what they are asking for is not reconsideration, but consideration of their arguments in the first instance. Although the Court was aware of the defendants' briefing, that was not apparent from the Court's previous order. For that reason as well, the Court will entertain the defendants' motion for reconsideration without burdening that motion with the need to demonstrate manifest error.

**3. The Defendants' Proposed Constructions of the Term "Inventory"**

There is some confusion in the defendants' submissions about exactly what the defendants are seeking by way of a claim construction. In their supplemental brief, they argued that "'Inventory Should be Construed as 'Quantity,'" and they argued, with some circularity, that "inventory," in the '830 patent claims, means "the quantity of the items, or types of items in

inventory." They objected to Kroy's contention that the term "inventory" in the patent is broader and "can include information such as the 'identification, description, price, quantity, availability or location" of goods or services. Dkt. No. 120, at 3. Throughout that pleading, the defendants urged that "an 'inventory' refers to a 'quantity,'" id. at 5, that "'inventory' as used in [the patent] must be a 'quantity,'" id. at 6, and that "inventory" must be equated with "quantity," id. That position appears to contemplate that inventory must be a measure of quantity and contain no other information.

The position the defendants took in their supplemental brief was consistent with the position they took at the claim construction hearing. There, they argued simply that "an inventory should be construed as a quantity." Dkt. No. 144, at 55.

In their motion for reconsideration, however, the defendants have proffered a different proposed construction of the term "inventory." They now argue that the term inventory "must be construed to include 'quantity'" (emphasis added), and "to require 'quantity.'" Dkt. No. 172, at 3, 4. Thus, the defendants are now arguing not that inventory should be equated with quantity, but only that a measure of quantity is a necessary element of the claim term "inventory."

The defendants' initial position—that inventory must be equated with quantity—is clearly wrong. The '830 specification makes that abundantly clear. Regardless of whether an inventory, as that term is used in the patent, must contain information about quantity, it is clearly not the case that the inventory cannot include other information identifying or pertaining to the items in question. The specification explains that the inventory system provides information such as the number of particular items, the type of items available, and the location where those items are found. See, e.g., '830 patent, col. 15, ll. 44-47 ("Thus, the award database 204 can be

6

automatically updated to reflect the retailer's current inventory according to inventory numbers, such as SKUs, type of inventory, or the like."); col. 39, ll. 21-24 ("That is, the retailer may permit the HTTP server 188 to query the retailer's inventory system 212 to determine merchandise available for incentive programs, locations of merchandise, or other information."); id., col. 41, ll. 11-16 ("The items stored in the award database may include the method of fulfillment (i.e. by a third party, by a sponsor or by a retailer), identification numbers of the item, which may be accomplished by utilizing the retailer's inventory identifying data, a description of the item and the number of items available."). To the extent that there is any lingering ambiguity about the defendants' position on this claim construction issue, the Court rejects the argument that the term "inventory" equates to quantity. In the remainder of this order, the Court will address the argument the defendants made in the motion for reconsideration, i.e., the defendants' contention that the term "inventory" requires a measure of quantity, although it may contemplate the inclusion of other information as well.

In its December 23, 2014, claim construction order, the Court ruled that an inventory "is not limited to a measure of quantities of items, which might be suggested by defining inventory in terms of quantity." Dkt. No. 162, at 12. Moreover, the Court concluded that using the term "quantity" to define the term "inventory" would not add clarity to the term "inventory" in the definition of "inventory management system." Id. The Court therefore declined to adopt the defendants' proposed construction. The Court now addresses, and rejects, the defendants' argument that "quantity" is a necessary component of the term "inventory," as that term is used in the '830 patent

### 4. The Defendants' Arguments in Support of Their Current Proposed Construction

The defendants make four arguments in support of their contention that the definition of the claim term "inventory" necessarily includes a measure of quantity.

**a.** First, the defendants point out that in its opinion in the Safeway case, the PTAB construed the term "inventory" to mean "the quantity of goods and materials on hand," and the term "inventory management system" to require "a system that manages the available quantity (i.e., inventory) of an item." Dkt. No. 113-1, at 6; see also Dkt. No. 113-2, at 3-4 (PTAB opinion on rehearing). The defendants do not argue that Kroy urged that definition on the PTAB; instead, they contend that "at no point did Kroy attempt to inform the PTAB that Kroy believed the PTAB's broadest reasonable interpretation of this element was too narrow." Dkt. No. 120, at 4. That failure, according to the defendants, should bar Kroy from "captur[ing] claim scope broader than the PTAB's broadest reasonable interpretation of the inventory-related elements." Id.

The Court rejects that argument. To be sure, if Kroy had advocated the narrow definition of inventory that the PTAB adopted, it would face a disclaimer issue before this Court. But the defendants have not pointed to anything that Kroy did or said before the PTAB (or the PTO more generally) that constituted advocating the definition of "inventory" that the PTAB adopted. See Dkt. No. 91-1, at 2-66 (Preliminary Response of Patent Owner). The defendants therefore have not established any basis for a finding that Kroy has disclaimed claim scope with respect to the meaning of the term "inventory." No disclaimer of claim scope flows from Kroy's failure to argue against, or seek reconsideration of, the PTAB's construction of that term.

8

On the merits, the PTAB did not engage in a detailed analysis of the meaning of the term "inventory" in the context of the '830 patent. Citing a dictionary definition of "inventory," the Board ruled, without elaboration, that "the plain meaning of 'inventory' is '[t]he quantity of goods and materials on hand." Dkt. No. 113-1, at 7. This Court previously recognized, in its claim construction order, that the term "inventory" is typically associated with a measurement of the quantity of items, at least as referred to inventories of goods. But, as the Court explained above, the measurement of the quantity of goods does not define the outer limits of the term "inventory," either in common parlance or in the '830 patent.

Even if the PTAB's brief discussion of the term inventory is understood to require that inventory must <u>include</u> a measure of quantity, rather than that inventory <u>equates</u> to a measure of quantity, the Court still regards the PTAB's definition as inadequate in the context of the '830 patent. As the Court has ruled, the '830 patent applies to awards that include not only products, but also services and like benefits, such as cash, loyalty points, and airline miles. While quantity may be a natural component of an inventory of products, it is far less clear that quantity is a necessary or even a natural component of an inventory of services or other benefits. For example, consider an "inventory" of possible rewards offered by a chain of service stations. The services could include of a free car wash, a free oil change, a reduced price tune-up, or a free tire rotation. The "inventory" could, for example, list those stations at which each of those award services is available. It would not be necessary for the inventory to include a quantity component, unless the designers of the awards program had a special desire to limit the number of car washes or tune-ups to a particular figure. Thus, to impose a requirement that the term "inventory" must include a reference to quantity would go a long way toward limiting the patent

9

to awards consisting of goods. The Court is not prepared to conclude that the '830 patent should be limited in that fashion based on the PTAB's brief discussion of the term "inventory" in its orders denying a request for inter partes review.

**b.** The defendants next argue that their proposed construction of the term "inventory" is "mandated by the specification" of the '830 patent. That argument is unconvincing. The portions of the specification to which the defendants referred in their supplemental briefing are consistent with the defendants' definition, in that they describe the relationship between the inventory management system and the awards database in a typical case involving awards consisting of goods. But those passages of the specification do not define the limits of the term "inventory," and in particular they do not address the role of an "inventory" in the context of awards consisting of services and the like.

The defendants begin by citing two excerpts from the specification that address the use of the patented method by retailers.[1] '830 patent, col. 15, ll. 24-53. In that context, the specification states that the retailer may create an "award database," which is "connected via an electronic data interchange to the retailer's proprietary inventory system." Id. at ll. 41-44. In that manner, the award database "can be automatically updated to reflect the retailer's current inventory according to inventory numbers, such as SKUs, type of inventory, or the like." Id., at ll. 44-47. That passage contemplates that the rewards will be items carried by the retailer. The references to the inventory of those items suggest a standard inventory, which would typically reflect the identity and quantity of various items in stock or otherwise available for distribution

---

[1] As noted in the Court's December 23, 2014, claim construction order, the '830 patent defines the term "retailer" very broadly. Dkt. No. 162, at 5. In this order, as it did in the claim construction order, the Court will use that term in its narrower, more conventional sense, to mean a vendor who sells goods to retail customers.

10

by the retailer. However, those passages refer only to the example of the use of the claimed method by retailers.

The second portion of the specification relied on by the defendants is similarly directed to the use of the method by retailers; it refers, in particular, to the "retail redemption method of fulfillment." '830 patent, col. 40, line 59. The passage on which the defendants rely states: "The items stored in the award database may include the method of fulfillment (i.e. by a third party, by a sponsor or by a retailer), identification numbers of the item, which may be accomplished by utilizing the retailer's inventory identifying data, a description of the item and the number of items available." <u>Id.</u>, col. 41, ll. 11-16. Again, that passage supports the notion that for a retailer, an inventory typically involves identification of the nature and number of goods available. But the context is specific to retailers, and the use of the term "inventory" is not necessarily as broad as it is in the claims, which are not limited to sellers of goods as opposed to, for example, providers of services.

The defendants quote from another passage of the specification dealing with the process of award fulfillment, again relating to retailers. <u>See</u> '830 patent, col. 45, ll. 5-6. In that context, the specification states that the award database contains information about prizes, including information provided through a connection with the retailer's inventory system, "so that each prize recorded in the award database can be tied, by an inventory number or SKU, to the exact item, or type of items, in the inventory of the retailer." <u>Id.</u>, col. 46, ll. 21-34. That passage adds nothing to the previously quoted passage, which establishes only that in the context of a retailer's award system, a conventional inventory system is connected with the awards database for the exchange of information. That passage from the specification, like the others quoted by the

defendants, does not serve to limit the definition of "inventory" to require that it contain information about a "quantity" of items.

**c.** Next, the defendants briefly argue that the prosecution history of the '830 patent shows that an "inventory" must refer to a "quantity" of items. They cite a statement made by Kroy's prosecuting attorney in distinguishing the application from a prior art reference known as Kanter. The prosecuting attorney said the following about Kanter:

> Kanter, like Klug, also does not address communication with an inventory management system of a plurality of providers according to the present invention. Kanter relates to a pyramidal, multilevel marketing referral system methodology. Kanter's system does not allow a sponsor to designate an item to be redeemed. Kanter has <u>no</u> knowledge of merchant provider's inventory data, let alone real time knowledge and allocation of inventory. Kanter only allows a designation of a redemption location and a general amount of redemption.
> The claimed invention, by comparison, sets forth systems and methods . . . whereby the sponsor of the award may select or determine what award unit . . . will be provided to the consumer user, by communication with an inventory management system for multiple providers and may designate the location of the redemption. . . . The selection can also include a specific consumer user selected by the sponsor which can, e.g., be instructed to go to a store identified as having the award by the inventory management system to pick up the award unit. . . . The award unit can then be allocated from inventory to ensure availability upon a visit from the specific consumer user.

Amendment and Reply Under 27 C.F.R. §§ 1.111 and 1.121, August 26, 2002, at 23-24, Dkt. No. 82-3, at 40-41.

That passage makes essentially the same point that is expressed in the specification: that in the retail setting, the inventory management system will enable the sponsor to select what award to offer to the consumer and identify where that particular item can be found, so that the sponsor can direct the customer to that location. The passage contains no disclaimer of claim scope or other indication that the term "inventory" must be defined to necessarily include information about quantity.

**d.** Finally, the defendants contend that the Court should construe the term "inventory" to include "quantity" because Kroy's own expert testified that a measurement of quantity is implicit in the meaning of the term "inventory." This is an awkward point for Kroy. In the course of his testimony, Kroy's expert stated that "inventory means I've got to know at least how many there are." Dkt. No. 175-4, at 3. Standing alone, that testimony would be damaging to Kroy. Kroy argues that in context the statement is not damaging, as the witness was simply attempting to recall, and misremembering, his testimony from the previous day's deposition. In fact, on the prior day, the witness had given testimony that was consistent with Kroy's position. In response to the direct question whether "an inventory need[s] to provide a count of items," he testified: "Well, it would be helpful, but it doesn't have to. It wouldn't be an absolute requirement. It would be nice." Dkt. No. 175-3, at 6. While the witness never clearly retracted the damaging statement that he made on the following day, the state of the record is as follows: On the first day of his deposition, the witness testified that quantity is not a necessary component of an inventory. Then, on the following day, he testified that he thought he had testified on the previous day that "inventory means I've got to know at least how many there are." Dkt. No. 175-4, at 3. At best, that evidence is equivocal; it is certainly not a sufficient basis on which to pin the Court's claim construction of the term "inventory."

To reiterate, it is true that an inventory of a retailer's goods will typically contain a notation of the quantity of goods that are available, in addition to other information such as the types of goods and their location. But the Court is not persuaded that the meaning of the claim term "inventory" in the '830 patent should be narrowed to require that an inventory always contain information about the "quantity" of items available. As noted, the restrictive

13

construction proposed by the defendants would not comport comfortably with an award system consisting not of goods but of services or other benefits. Accordingly, the Court is not persuaded that the claim term "inventory" should be given the narrowing construction proposed by the defendants. The motion for reconsideration is therefore denied.

It is so ORDERED.

SIGNED this 10th day of February, 2015.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE